IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JORGE FERNANDEZ and<br>RENEE FERNANDEZ, h/w | : CASE No. 3-12-cv-00518-SDD-SCR |
| | : CIVIL ACTION |
| v. | : |
| TAMKO BUILDING PRODUCTS<br>INCORPORATED and<br>STATE FARM INSURANCE COMPANY | : JUDGE SHELLEY D. DICK |

### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

With the product at the center of this dispute no longer available, plaintiffs' right to recovery is all but eliminated.[1] Any claim that the product was "unreasonably dangerous in construction or composition" is incapable of proof. La. R.S. 9:2800.54(B). The same is true of a lack of conformity to express warranty claim.

That leaves plaintiffs with two alternatives. The first is to prove an unreasonable risk associated with the product's design, and plaintiffs have given little indication they intend to pursue that kind of claim. With the deadline for expert witness disclosures having passed, not one of plaintiffs' experts has identified a design defect. Understandably so, as the premise essential to plaintiffs' design claim would be that TAMKO No. 15 should not tear. But when subjected to a shearing force of sufficient magnitude, every saturated felt on the market will tear. That is not a design flaw. It is just the nature of the product.

---

[1] It is uncontested that the piece of felt alleged to have torn was discarded immediately following the accident.

The remaining alternative, and the one plaintiffs seem intent on pursuing, is that TAMKO No. 15 "is unreasonably dangerous because an adequate warning about [it] has not been provided." *Id.* This Memorandum in Support will therefore focus entirely on that claim.[2]

## I.   FACTS

Jorge Fernandez was injured when he fell to the ground from the steep-slope roof of a house in Baton Rouge. There were a number of other men on the job that day, but Mr. Fernandez was working alone. According to his version of the event, he slipped and fell when felt paper[3] he had nailed to the roof's wood base tore beneath his feet.

Saturated felt serves two purposes. During the roofing process it provides a temporary moisture barrier, protecting the wood deck from the elements. When the roof is completed, felt provides a secondary moisture barrier, protecting the wood deck from moisture that manages to seep beneath the shingles. Saturated felt is supplied by a number of building product manufacturers, TAMKO among them. Plaintiffs say the felt Mr. Fernandez had nailed to the roof, and his co-worker later discarded, was TAMKO No. 15.

If the felt was TAMKO No. 15, it would have been sold by the roll. On each roll would have been a label, and on each label an instruction. The instruction advised roofers to use "appropriate fall protection methods." An illustration of a stick figure falling from a roof accompanied the instruction. Mr. Fernandez recalled seeing rolls of the felt paper used on the job, but all he could recall about their labels was that they bore the number 15.

As a professional roofer, Mr. Fernandez was familiar with 15 lb. felt paper. In his three plus years in the trade he had used 15 lb. paper most of the time, using the heavier 30 lb. paper

---

[2] In filing this motion for summary judgment TAMKO is not waiving, and should not be viewed as waiving, its right to contest product identification. Whether the felt Mr. Fernandez had rolled out on the roof was a TAMKO product remains very much in doubt, and may well be an issue at trial, should plaintiffs' claim survive this motion.
[3] Felt paper is a generic term used by roofers to describe asphalt saturated felt, which consists, in part, of paper products.

only on occasion. Mr. Fernandez was also familiar with fall protection equipment. He knew that work on steep-slope roofs, particularly those more than six feet above ground level, carried a risk of serious injury, a risk that fall protection equipment eliminated.

The bottom edge of the roof where Mr. Fernandez was working the day of the accident was ten feet above ground level. Fall protection equipment was available from his employer, and the day before the accident Mr. Fernandez had used it. The day of the accident he did not.

II.   **ARGUMENT**

    A.   **PLAINTIFFS ARE UNABLE TO PROVE THE PROXIMATE CAUSE ELEMENT OF THEIR WARNINGS CLAIM**

A manufacturer's duty to warn arises when the product he supplies possesses "a characteristic that may cause damage." La. R.S. §2800.57(A) (West 2013). Under those circumstances, the manufacturer must exercise reasonable care to provide those who will be using the product with "an adequate warning of such characteristic and its danger." *Id.* Breach of that duty gives rise to liability if, and only if, the breach caused the injury claimed. *Peart v. Dorel Juvenile Group, Inc.*, 2011 WL 1336563 at *3 (E.D.La. 2011), *aff'd* 456 Fed. App'x. 446 (5th Cir. 2012) (manufacturer liable on warnings claim "only if the defect proximately caused the plaintiff's injury") (citations omitted). That is not what happened here.

Warnings are effective if they bring about positive behavior modification. They work when their recipient is educated by them, and then acts in accordance with his newly obtained information. Plaintiffs say the information TAMKO should have provided is that its No. 15 felt "should not be used on high pitched, steep-sloped roofs." Complaint, p. 3. Plaintiffs must then show that having been given that "adequate warning" Mr. Fernandez would have modified his behavior, and by doing so have avoided his injury.

3

That showing cannot be made, for two reasons. The first is simply that Mr. Fernandez paid no attention to the information TAMKO did provide. He recalled seeing the number 15, but nothing else. If, as is being assumed for this exercise, Mr. Fernandez saw, and used, TAMKO No. 15, he would also have seen the illustrated stick figure falling from the illustrated roof on the No. 15 label. Seeing that illustration should have reinforced his knowledge of the need for fall protection equipment. That it did not suggests Mr. Fernandez never looked at the label at all.[4]

Mr. Fernandez would not be the first to have a warnings claim dismissed for having not bothered to look at the manufacturer's safety instructions. The court faced that very situation in *Peart v. Dorel Juvenile Group, Inc.*, 2011 WL 1336563 (E.D.La. 2011), *aff'd* 456 Fed. App'x. 446 (5th Cir. 2012). The product involved was a step stool, the claim was that the manufacturer provided no information about its useful life. But what the manufacturer did provide was a label with important safety instructions, and the plaintiff admitted to having never read them. That admission ended the litigation. Any different instructions would have also gone unread, and so would not have caused her to modify her behavior. The allegedly inadequate warning could then not have been "the proximate cause of her injury." *Id.* at *3.

A similar fact pattern yielded a similar result in *Ortolano v. BDI Marketing, Body Dynamics, Inc.*, 05-989 (La. App. 5 Cir. 4/25/06), 930 So.2d 192. Mr. Ortolano had taken medication in excess of the label's recommended dosage, and admitted he had "not read the entire label." *Id.* at 194. Not surprisingly, the trial court found that Mr. Ortolano "would not have been aware of a 'sufficient' warning even if one had existed, [and that its omission] could not have been the proximate cause of his damages." *Id.* The Court of Appeal agreed, finding the

---

[4] Mr. Jimenez, the subcontractor who employed Mr. Fernandez, and Mr. Mancuso of Eagle Roofing, the general contractor that hired Mr. Jimenez to complete the work, also admitted having never read the warning label.

4

plaintiff's injuries "were not proximately caused by a characteristic of the product that rendered it unreasonably dangerous." *Id.* at 196.

By focusing on the felt plaintiffs have misidentified the hazard. It wasn't the felt. It was the roof. And the truth is that TAMKO did warn of that hazard. On its label for No. 15 felt was a recommendation that those using the product employ appropriate fall protection methods. Had that recommendation been followed, only then would Mr. Fernandez' safety been assured.

There is yet another piece missing from the cause in fact puzzle. Plaintiffs' contention is that a heavier felt would not have torn under the conditions on the roof that day. They have no facts to support that contention. Though based on the common sense concept that lighter is weaker than heavier, that general concept does not equate to cause in fact. A stronger felt could certainly have provided added resistance to the shearing force applied to the felt on the roof. But added resistance is not the answer, because the question is whether a stronger felt would have provided sufficient resistance, enough to withstand that shearing force.

Answering that question would require analysis of a number of other factors, such as the number and placement of the nails in the area where the tear occurred, and the stress applied to the felt by the weight of the shingles lying on the roof, and the parties have no information concerning them. Absent that information, the jury would be left to guess at cause in fact. And juries may not guess. See *State v. Fernandez*, 2009-KA-1727 (La.App. 4 Cir. 10/6/10), 50 So.3d 219.

That felt paper can tear is not the risk that requires a warning. That felt paper can tear is simply the nature of the product, expected to be known by experienced roofers, for whose use TAMKO No. 15 was intended. The risk that requires a warning is falling. TAMKO provided

5

that warning, and it went unheeded. That is what caused Mr. Fernandez to fall from the roof. That TAMKO did not provide the warning plaintiffs propose did not.

### B. TAMKO OWED MR. FERNANDEZ NO DUTY TO WARN

TAMKO No. 15 is not a product intended for use by the general public. Its ordinary user is a professional roofer, exactly how Mr. Fernandez described himself. Having spent more than three years working in residential roofing, and having used 15 lb. felt most of that time, Mr. Fernandez no doubt was, and would certainly have been expected to be, familiar with the product and its characteristics.

The same is true of Mr. Jimenez, the contractor who employed Mr. Fernandez, and Mr. Mancuso of Eagle Roofing, the general contractor that hired Mr. Jimenez to complete the work. Mr. Jimenez occasionally worked with his crew. He too would have been familiar with 15 lb. paper when he agreed to use the product Mr. Fernandez installed on the roof the day of his accident. Mr. Mancuso was the regional sales manager for Eagle Roofing who ordered the felt. To this day, he regularly orders 15 lb. felt for roofs.

Plaintiffs' claim is that TAMKO should have told Mr. Jimenez not to use its No. 15 felt paper for steep-slope roofing. The underlying premise is that 15 lb. paper tears more easily than 30 lb. paper, and so presents a greater hazard. But the relative strengths of the two products, measured by their resistance to a shearing force, is something every experienced roofer would know. Both products are reduced to a usable size by subjecting them to a shearing force. They are cut with a knife blade.

That simple fact brings plaintiffs' warning claim within an exception to the duty imposed on product manufacturers. "A manufacturer is not required to provide an adequate warning about his product when: (1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge

6

common to the community as to the product's characteristics; or (2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic." LPLA §2800.57B.

Whether an individual is a "sophisticated" user or purchaser so as to bring that exception into play is ordinarily a question of fact. See *Mozeke v. International Paper Co.,* 933 F.2d 1293, 1297 (5th Cir. 1991). But as with any question that is ordinarily one of fact, there are times the evidence can lead to but one logical conclusion. This is one of those times.

The "sophisticated user/purchaser" exception and its applicability were the subject of discussion in *Davis v. Avondale Industries, Inc.,* 975 F.2d 169 (5th Cir. 1992). Faced with a matter of first impression, the court concluded that under Louisiana law a "product manufacturer owes no duty to the *employee* of a purchaser if the manufacturer provides an adequate warning of any inherent dangers to the purchaser or if the purchaser has knowledge of those dangers and the duty to warn its employees thereof." *Davis,* 975 F.2d at 173 (emphasis in original, citation and footnote omitted).

Both of those apply here. TAMKO did provide an adequate warning of the inherent danger to purchasers of its No. 15 felt. The danger is falling while engaged in roofing, and TAMKO even instructed the purchaser on how to protect himself, and his employees, against it. Mr. Jimenez and Mr. Mancuso, the employers and purchasers here, also had knowledge of that danger. Mr. Mancuso required Mr. Jimenez and his employees to use fall protection equipment. Mr. Jimenez provided his employees with fall protection equipment, complying with the applicable Occupational Safety & Health Administration regulation. "Each employee on a steep roof with unprotected sides and edges six feet (1.8 m) or more above lower levels shall be

7

protected from falling by guardrail systems with toeboards, safety net systems or personal fall arrest systems." 29 CFR 1926.501(b)(11).

Mr. Fernandez had knowledge of the risk too, even without having looked at any product labeling. He learned of the risk from the contractor who taught him the roofing trade, was provided fall protection equipment by each of his employers, and routinely used fall protection equipment when working on steep-slope roofs.

The risk here was falling. Mr. Fernandez knew it. Mr. Jimenez knew it. As for the fact that the product was capable of being torn - Mr. Fernandez and Mr. Jimenez knew that too. Both men were sophisticated users of 15 lb. paper with knowledge of that product's characteristics within the meaning of the LPLA. TAMKO had no duty to instruct them further on that subject.

III. **CONCLUSION**

The injury suffered by Mr. Fernandez was tragic, but it was not one for which TAMKO was responsible, factually or legally. Plaintiffs cannot establish the proximate cause element of their claim, as Mr. Fernandez had not looked at the product label beyond seeing the number 15, and as there is no evidence that use of 30 lb. paper would have altered the outcome. TAMKO provided the only warning that mattered, instructing roofers to use fall protection equipment. Given their experience with 15 lb. paper on steep-slope roofs, Mr. Fernandez and Mr. Jimenez were sophisticated users/purchasers. TAMKO owed them no additional warning, and is entitled to a judgment in its favor.

Respectfully submitted,

PLAUCHE MASELLI PARKERSON, LLP


By:   /s/ Scott H. Mason
      Joseph Maselli, Jr. (#9021)
      Scott H. Mason (#29329)
      701 Poydras Street
      Suite 3800
      New Orleans, LA 70139
      Telephone: 504-582-1142
      Fax: 504-582-1172


      William J. Ricci, Esquire *Pro Hac Vice*
      Lavin, O'Neil, Ricci, Cedrone & DiSipio
      190 N. Independence Mall West
      6th and Race Streets, Suite 500
      Philadelphia, PA 19106
      Telephone: 215-627-0303
      Fax: 215-627-2551

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JORGE FERNANDEZ and<br>RENEE FERNANDEZ, h/w | CASE No. 3-12-cv-00518-BAJ-SCR |
| | CIVIL ACTION |
| v. | |
| TAMKO BUILDING PRODUCTS<br>INCORPORATED and<br>STATE FARM INSURANCE COMPANY | JUDGE BRIAN A. JACKSON |

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically with the Clerk of Court using the CM/EFC system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system and faxed to the following:

Leonard Cardenas, III, Esquire
6513 Perkins Road
Baton Rouge, LA 70808


PLAUCHE MASELLI PARKERSON, LLP


By: ___/s/ Scott H. Mason_____
Joseph Maselli, Jr. (#9021)
Scott H. Mason (#29329)
701 Poydras Street
Suite 3800
New Orleans, LA 70139
Telephone: 504-582-1142
Fax:504-582-1172