## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JORGE FERNANDEZ AND
RENEE FERNANDEZ

CIVIL ACTION

VERSUS

NO. 12-518-SDD-SCR

TAMKO BUILDING PRODUCTS,
INCORPORATED, ET AL

### RULING

This matter is before the Court on the *Motion for Summary Judgment* filed by the

Defendant, Tamko Building Products, Incorporated ("Defendant" or "Tamko").[1]  Plaintiffs,

Jorge Fernandez and Renee Fernandez ("Plaintiffs" or "Plaintiff"[2]), have filed an *Opposition*

to the motion.[3]  For the reasons which follow, the Court finds that the Defendant's motion

should be granted in part and denied in part.

### I.    FACTUAL BACKGROUND

Number 15 felt is a saturated felt underlayment used during the roofing process to

provide a temporary moisture barrier which protects the wood deck from the elements.

---

[1] Rec. Doc. No. 68.

[2] Plaintiff Renee Fernandez is the wife of Plaintiff Jorge Fernandez.  Renee's claim is only for loss of consortium.  Where the Court refers to Plaintiff in the singular in this opinion, it is speaking of Jorge Fernandez.

[3] Rec. Doc. No . 74.

Once a roof is completed, the felt provides a secondary moisture barrier which protects the wood deck from moisture that may seep beneath the shingles. After installation, and before the shingles are installed, the felt underlayment is a walking surface used by roofing installers.

Eagle Roofing Company ("Eagle Roofing") was hired to repair the roof of a home that had been damaged by a hail storm. Eagle Roofing subcontracted the roofing job to Edgar Jiminez ("Jiminez"), the direct employer of Plaintiff Jorge Fernandez and Inmar Torres. Eagle Roofing Manager David Mancuso ("Mancuso") allegedly ordered #15 roofing underlayment from Advanced Building Products in Harahan, Louisiana.[4] As Plaintiff, an experienced roofer, scaled the steeply gabled roof upon which he was working, the roofing felt allegedly tore, allegedly causing him to fall and sustain serious injuries.[5]

This Court is called to decide whether the roofing felt provided an unreasonably dangerous walking surface and whether Tamko, the felt manufacturer, adequately warned of the danger of the felt tearing while being walked upon. Tamko has moved for summary dismissal on the grounds that, because the actual felt involved in this case was discarded, the Plaintiff lacks sufficient evidence that the felt was unreasonably dangerous. On the

---

[4] Plaintiff alleges that the #15 roofing underlayment delivered to the residence was "TAMKO #15" as shown on the product's wrapping. The Defendant does not waive its right to contest that the product at issue was actually TAMKO #15. Plaintiff offers various photograph exhibits which depict the rolls of #15 roofing underlayment as delivered to the home of the roofing job. Plaintiff argues that "TAMKO #15" is clearly seen on the product wrapper in these photographs. Defendant counters that TAMKO manufactures four different kinds of #15 felt, and there is evidence in the record that the supplier who took the order filled it not with TAMKO #15, as alleged by Plaintiff and tested by Plaintiff's experts, but rather TAMKO ASTM #15. The Court acknowledges Defendant's right to contest product identification; however, for the purposes of this motion, the Court will assume *arguendo* that the product at issue was TAMKO #15.

[5] Rec. Doc. No. 74-27, pp. 3-4 (Deposition of Jorge Fernandez, pp. 104-105).

warning issue, Tamko contends that the risk presented was that of falling, and that although Tamko did not warn of the possibility of the felt tearing under the demand of foot traffic, Tamko did warn of the risk of falling.

The Court declines to summarily dismiss Plaintiff's defective product claim merely because the actual product in question was discarded. The Court finds that the felt in question may be shown to be unreasonably dangerous in construction or composition through the use of an exemplar that is demonstrated to be an accurate surrogate for the original.

As to the warning claim, the Court finds that the risk of harm was that of falling, and Tamko did warn, both in writing and pictorially, of that risk. Thus, the Plaintiff's warning claims will be dismissed.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[6] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

---

[6] Fed. R. Civ. P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

and on which that party will bear the burden of proof at trial."[7]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[8]  If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[9]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[10]  The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[11]  Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[12]  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[13]  Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no

---

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir. 1995).

[8] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (*quoting Celotex*, 477 U.S. at 323-25, 106 S.Ct. at 2552).

[9] *Id.* at 1075.

[10] *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).

[11] *Little*, 37 F.3d at 1075;  *Wallace*, 80 F.3d at 1047.

[12] *Wallace*, 80 F.3d at 1048 (*quoting Little*, 37 F.3d at 1075). *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

[13] *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995).

genuine issue for trial.[14]

## B.    The Louisiana Products Liability Act ("LPLA")[15]

The LPLA contains an exclusive remedy provision limiting a plaintiff's theories of recovery against a manufacturer of an allegedly defective product to those established by the LPLA.[16]  "To maintain a successful products liability action under the LPLA, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product 'unreasonably dangerous'; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else."[17]  Under Louisiana law, a product can be unreasonably dangerous in construction or composition; in design; due to an inadequate warning; or because it does not conform to an express warranty of the manufacturer about the product.[18]  The plaintiff bears the burden of proving that a product is unreasonably dangerous.[19]

Plaintiff claims the TAMKO #15 was unreasonably dangerous in its construction or composition, and due to an inadequate warning or failure to warn.  The Court turns to a discussion of these claims and the applicable law and jurisprudence.

---

[14] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

[15] La. R.S. 9:2800.51, *et seq.*

[16] *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 261 (5th Cir. 2002).

[17] *Id.*, citing La. R.S. 9:2800.54(A).

[18] *See* La. R.S. 9:2800.54(B).

[19] *See* La. R.S. 9:2800.55(D).

### 1.     Unreasonably Dangerous in Construction or Composition

Plaintiff contends that the TAMKO #15 installed on this particular job was defective in construction or composition as contemplated by the LPLA.[20] Relying on his experts' testing and testimony, Plaintiff contends that TAMKO #15 underlayment "should *never* be used on steep sloped roofs... ."[21] Plaintiff further argues that his experts' testing and testimony establish that TAMKO #15 is not strong enough to withstand the weight of the foot traffic of a roofer weighing 132 pounds (the weight of Plaintiff) on a 10 on 12 steep roof. One of Plaintiff's experts testified that TAMKO #15 should never be used by roofers on any roof having a 7 on 12 slope or greater.[22]

The Defendant argues that this theory of recovery is not available to the Plaintiff because the allegedly defective product was discarded following the incident. Thus, Defendant contends that "[a]ny claim that the product was 'unreasonably dangerous' in construction or composition' is incapable of proof."[23] The Defendant also does not concede that the methodology employed by Plaintiff's experts would satisfy the *Daubert* standard.[24]

A plaintiff who contends that a product is unreasonably dangerous in construction

---

[20] Rec. Doc. No. 74, p. 8.

[21] *Id.*, citing Rec. Doc. No. 74-2, p. 14 (Deposition of Jerry L. Householder p. 14)(emphasis in original).

[22] With respect to these contentions made by Plaintiff's proffered experts, TAMKO again asserts the argument that these experts may very well have been testing the wrong TAMKO product as set forth previously. Rec. Doc. No. 75, p. 3.

[23] Rec. Doc. No. 68-1, p. 1, citing La. R.S. 9:2800.54(B).

[24] *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Khumo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

or composition must provide evidence that the "characteristic of the product condition that renders it unreasonably dangerous" existed "at the time the product left the control of its manufacturer."[25]   Further, "[a] product is unreasonably dangerous in construction or composition if, at the time it left the manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer."[26]

Here, it is undisputed that the felt underlayment at issue was removed and discarded following Plaintiff's incident, and it was destroyed before any examination could be made of the product.[27]   Thus, Plaintiff's argument that his expert performed laboratory testing of the "specific TAMKO #15 felt at issue" is not entirely correct.[28]   Plaintiff's experts could only have tested other rolls of TAMKO #15.  However, the Court is not willing to find as a matter of law that Plaintiff cannot satisfy his burden of proof by testing and analysis of exemplar rolls of TAMKO #15.  The Court recognizes that the Plaintiff will bear a heavy burden at trial in proving his construction/composition defect claim.  The Court also acknowledges the Defendant's right to present evidence that the product which was actually used in this case was not TAMKO #15.  Nevertheless, the Court finds that sufficient material fact issues exist on this issue such that summary judgment is not proper on this claim.  The Defendant has not cited any authority for the proposition that a plaintiff

---

[25] La. R.S. 9:2800.54(C).

[26] La. R.S. 9:2800.55.

[27] Rec. Doc. No. 68-5, p. 2 (Deposition of Inmar Torres, p. 65).

[28] Rec. Doc. No. 74, p. 7.

may never prove a defective construction/composition claim when the actual product has been discarded but identical versions of the product are available for testing. Accordingly, the Court finds summary judgment is not proper on this claim.[29]

### 2.    Failure to Warn[30]

Plaintiff also alleges that TAMKO breached its duty to warn under the LPLA because there was no warning on TAMKO #15 that it could tear under foot traffic on steep roofs. Plaintiff contends the fall protection recommended in the given warning was inadequate because it would not have prevented the tearing of the #15 felt that Plaintiff contends was the cause of his fall and subsequent injuries. The Court rejects this proposition and finds that the risk of tearing is not the risk of which a warning is required; rather, falling is the actual risk.

The Defendant contends that the warning provided was sufficient, if heeded, to prevent the injury Plaintiff suffered. The warning on TAMKO #15 contained an illustration of a stick figure falling from a roof on the #15 label, accompanied by the words: "APPROPRIATE FALL PROTECTION METHODS SHOULD BE USED WHENEVER

---

[29] Should the Plaintiff be able to present evidence of a defect in construction or composition, the Court notes that the principles of comparative fault would apply to Plaintiff's failure to use the provided fall protection equipment. *See* LSA-C.C. art. 2323; *Broussard v. State ex rel. Office of State Buildings*, 2012-1238 (La. 4/5/13), 113 So.3d 175, 189 ("[P]laintiff's 'awareness of the danger' is but one factor to consider when assigning fault to all responsible parties under La. Civ. Code art. 2323.")(internal citations omitted).

[30] Plaintiff attempts an argument that perhaps a warning should have been given in both English and Spanish. The Court will not entertain this argument because: (1) there is no requirement under the LPLA or related jurisprudence that a foreign language warning be given; (2) the warning on the product allegedly at issue contained a pictoral symbol which depicted the risk of falling; and (3) as shall be set forth in detail, the evidence establishes that the given warning was not read or was ignored.

WORKING ON ROOFS.  Use Caution.  Wrapper may be slippery."[31]  Plaintiff argues the given warning is "irrelevant" given that Plaintiff used fall protection equipment every day except for the date of the incident.[32]  Plaintiff further contends this warning is, in fact, not a warning at all of the actual risk, that Plaintiff argues is the chance of the felt paper tearing on steep slope roofs.

Defendant counters that, if followed, this warning would have prevented exactly the injury that Plaintiff suffered.  The Defendant also contends that, based on the admission by Plaintiff and his contractor that neither of them ever read the label which contained the warning, Plaintiff is precluded from recovery under this theory of liability.  The record reflects that David Mancuso, the Eagle Roofing Manager who purchased the felt, never looked at the label;[33] Edgar Jiminez, the Eagle Roofing Subcontractor and Plaintiff's employer, never read the label;[34] and Plaintiff recalled seeing the number 15, but nothing else about the label.[35]

To maintain a failure to warn claim under the LPLA, "a plaintiff must demonstrate that the product in question has a potentially damage-causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about this

---

[31] Rec. Doc. No. 74-22.

[32] Rec. Doc. No. 74, p. 7.

[33] Rec. Doc. No. 68-8, Deposition of David Mancuso, p. 22.

[34] Rec. Doc. No. 68-7, Deposition of Edgar Jiminez, p. 27.

[35] Rec. Doc. No. 68-3, Deposition of Jorge Fernandez, p. 89.

characteristic."[36] The manufacturer is liable for an inadequate warning only if the defect proximately caused the plaintiff's injury.[37] The plaintiff bears the burden of proving that "but for" the inadequate warning, the accident in question would not have occurred.[38]

In support of its position, the Defendant relies on *Peart v. Dorel Juvenile Group, Inc.*, a products liability case where the plaintiff had been injured when she fell from a step stool while shelving purses at a department store.[39] The plaintiff sued the manufacturer of the stool under the LPLA, claiming a failure to warn.[40] The label on the stool actually read: "CAUTION KEEP BODY CENTERED BETWEEN THE SIDE RAILS. DO NOT OVER-REACH. SET ALL FOUR FEET ON FIRM LEVEL SURFACE. WEAR SLIP-RESISTANT SHOES." The label also contained the words: "Light Household Duty Rating Working Load: 200 lbs."[41] The plaintiff had testified in her deposition that she did not read the labels on the stool before using it, and she also testified that she weighed more than 250 pounds at the time of the incident.[42] The record also revealed that the stool had been used in a commercial setting between five and ten years.[43]

---

[36] *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 264 (5th Cir. 2002).

[37] La. R.S. 9:2800.54(A); *see also, Wheat v. Pfizer*, 31 F.3d 340, 342 (5th Cir. 1994).

[38] *See Brown v. Parker-Hannifin Corp.*, 919 F.2d 308, 311 (5th Cir. 1990).

[39] No. 09-7463, 2011 WL 1336563 (E.D. La. 4/7/11).

[40] *Id.*

[41] *Id.* at *1.

[42] *Id.*

[43] *Id.*

The plaintiff claimed that the stool should have warned of the increased risk of collapse with use and age and also provided instructions on how to identify when the stool has reached the end of its usable life, and what to do when that occurs.[44] An engineering expert tested the stool and reported that the plaintiff's weight was not a factor in the accident, but that the stool broke because it "wore out."[45] This expert also expressed the opinion that the stool should have had a warning that stated the step stool can wear out over time, what to look for to make this determination, and what to do if the stool appears worn out.[46]

The court noted that "[f]ailure to warn claims do not necessarily present a jury issue.[47] 'A "mere allegation of inadequacy" is insufficient for a plaintiff to survive summary judgment on a failure-to-warn claim.'[48] The plaintiff must point to specific facts in the record that demonstrate that there is a genuine issue of material fact to defeat summary judgment."[49] Considering the plaintiff's own deposition testimony that she did not read the label and her failure to indicate that she would have liked or needed any more information before using it on the date of the accident, the court held that the plaintiff had not "established that a warning regarding the useful life of the step stool would have caused

---

[44] *Id.* at *2.

[45] *Id.*

[46] *Id.*

[47] *Id.* at *3, citing *Brown*, 919 F.2d at 311 (citing *Anderson v. McNeilab, Inc.*, 831 F.2d 92, 93 (5th Cir. 1987)).

[48] *Id.*, quoting *Gruvre v. Kroger Co.*, 2010-689 (La. App. 3 Cir. 2/2/11), 54 So.3d 1249, 1256 (quoting *Stahl*, 283 F.3d at 264-65).

[49] *Id.*, citing *Gruvre*, 54 So.3d at 1256.

her to not use it.  Also, plaintiff admitted at oral argument that it is obvious that the step stool has a useable life, and that it should be inspected periodically to determine the end of its usable life."[50]  Finding that plaintiff failed to show a genuine issue of material fact regarding whether an inadequate warning was the proximate cause of her injury, the court granted summary judgment in favor of the manufacturer.[51]  The Fifth Circuit affirmed the ruling of the district court: "In like manner, we hold that the district court did not err in dismissing Peart's claims for failure to give a warning that would not have been read and, consequently, could not have been the 'but for' cause of her injuries."[52]

The Louisiana Fifth Circuit Court of Appeal reached the same conclusion in *Ortolano v. BDI Marketing*, wherein a plaintiff brought a products liability claim against a drug manufacturer alleging a particular drug caused his heart attack.[53]  The plaintiff had read the dosage information and warnings but admitted that he failed to read the entire package label.[54]  Further, the plaintiff acknowledged that, despite reading the label's recommended dosage of six tablets in a twenty-four hour time period, he took six tablets within fourteen and a half hours.[55]  The trial court found that an abuse of dosage was not a reasonably

---

[50] *Id.*

[51] *Id.*

[52] *Peart v. Dorel Juvenile Group, Inc.*, 456 F. App'x 446, 448, 2012 WL 11022 (5th Cir. 1/4/12).

[53] 05-989 (La. App. 5 Cir. 4/25/06), 930 So.2d 192.

[54] *Id.* at 193.

[55] *Id.*

anticipated use, regardless of the motive in taking the medication.[56]  The Fifth Circuit affirmed the trial court's summary judgment ruling in favor of the manufacturer, stating: "These warnings are adequate and have met the standards of the United States Food & Drug Administration.  In addition, Ortolano admitted in his deposition that he did not even read the warnings that were present on the packaging."[57]

Applying the same reasoning to the facts of this case, it is clear that Plaintiff failed to heed the warning label on the felt paper; thus, Plaintiff has failed to show how the type of warning he contends would have been appropriate (or any other warning at all) would have changed the outcome of the accident since it is unlikely that Plaintiff would have heeded that warning either.  There is no reason to believe, based on the summary judgment evidence before the Court, that Plaintiff would have adhered to an alternate warning considering he did not follow the warning provided to wear fall protection. Therefore, the Court finds that Plaintiff has failed to create a genuine issue of material fact regarding the failure to warn claim.

Furthermore, the Court is not persuaded by the suggestion that it was standard industry practice for roofers not to use fall protection equipment.  Plaintiff curiously argues, citing the testimony of several of his experts, that "it is a very common and known practice throughout the roofing industry for fall protection not to be used by roofers on residential

---

[56] *Id.* at 194.

[57] *Id.* at 196.

Doc 1006                                 13

roofs."[58] This is apparently despite the fact that some of the same experts acknowledge that OSHA regulations require fall protection equipment be utilized when working above six feet.[59] And yet, Plaintiff admits that not only was he provided fall protection equipment for this particular job, but, in fact, "Plaintiff and all of his co-workers had used fall protection throughout the entirety of that job."[60] Plaintiff explains that he did not use fall protection on the date of his fall "[b]ecause the front entry roof was so small and its location relative to the ridgeline of the roof did not provide a tie-off point, there was no practical use of fall protection without destroying the structure of the house."[61] However, Plaintiff concedes that one expert testified that a manlift could have been used on this portion of the roof,[62] but then disposes of this safety measure as "cost prohibitive" and "hard to work from."[63] Furthermore, as the Defendant noted, one of Plaintiff's experts identified an alternative safety option, and a defense expert actually identified five viable safety alternatives which would have prevented Plaintiff's fall.[64] Essentially, Plaintiff would have this Court not only

---

[58] Rec. Doc. No. 74, p. 3, citing Rec. Doc. No. 74-1 (Deposition of Robert Whitcomb, pp. 82-84); Rec. Doc. No. 74-12, p. 1, 74-14, pp. 6-7 (Deposition of Patrick Heil, pp. 27, 62-63); Rec. Doc. No. 74-3, pp. 5-6 (Deposition of Householder, pp. 35-36); Rec. Doc. No. 74-18, pp. 2-3, 9-10 (Deposition of Wendell Rust, pp. 46-47, 71-72); Rec. Doc. No. 74-17, p. 7 (Deposition of Mancuso, p. 60).

[59] *See* Rec. Doc. No. 74-3, pp. 5-6 (Deposition of Householder, pp. 35-36).

[60] Rec. Doc. No. 74, p. 5, citing Rec. Doc. No. 74-26, pp. 7-8 (Deposition of Torres, pp. 41-42); Rec. Doc. No. 74-1 (Deposition of Whitcomb, p. 81).

[61] Rec. Doc. No. 74, p. 6.

[62] Rec. Doc. No. 74, p. 6; *See* Rec. Doc. No. 74-11, p. 7 (Deposition of Heil, p. 20).

[63] *Id.*

[64] Rec. Doc. No. 75, p. 5, citing Rec. Doc. No. 74-3, pp. 6-7 (Deposition of Householder, pp. 36-37); Rec. Doc. No. 75-4, p. 19 (Report of Wendell Rust, OSHA Consultant, p. 18).

disregard, but in fact reward, his own negligence.

Considering that Plaintiff ignored the warning label on TAMKO #15, the Court finds that Plaintiff cannot prove that the failure to warn or an inadequate warning was the proximate cause of his injuries as required under the LPLA. The heeding presumption has been rebutted by the Defendant. Moreover, the Court is not persuaded by the argument that the risk was the tearing of the paper rather than falling from the roof. Clearly, had Plaintiff heeded the warning on TAMKO #15 and utilized fall protection equipment or other safety options that were available, his fall and subsequent injury would not have occurred.

### 3.  No Duty to Warn Sophisticated User

The Defendant also contends that, although it actually did warn of the danger of falling, it had no duty to warn this particular Plaintiff under the LPLA and applicable jurisprudence. Defendant argues that TAMKO #15 is not a product intended for ordinary use by the general public; rather, its ordinary user is a professional roofer. Defendant further contends that both Plaintiff and his employer Jimenez described themselves as professional roofers,[65] and Defendant argues they should be well aware of the strength and characteristics of TAMKO #15, TAMKO #30, or any other felt paper product. Likewise, Mr. Mancuso, who chose and purchased the product as Regional Sales Manager for Eagle Roofing, is a sophisticated user and purchaser. Thus, as sophisticated users of the product, the Defendant contends it had no duty to warn any of the purchasers or subsequent users of this product.

---

[65] *See* Rec. Doc. No. 68-3, p. 5 (Deposition of Jorge Fernandez, p. 27, lines 1-3).

A manufacturer has a lessened duty to warn of danger when the danger is obvious. This duty is further lessened when the user is sophisticated.[66]  Under Louisiana law, a manufacturer has no duty to warn a sophisticated user.[67]  The LPLA provides that: "A manufacturer is not required to provide an adequate warning about his product when ... [t]he user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic."[68]  "Similarly, a manufacturer has no duty to warn a sophisticated *purchaser*.[69]  'Louisiana does not hold [that] a manufacturer is compelled to warn sophisticated purchasers of dangers of which the buyer either knows or should be aware.'"[70] Furthermore, "manufacturers have no duty to warn an end-user of a product's dangers when the product is initially purchased by a sophisticated user that would have the duty to warn the end-user."[71]

---

[66] *Savant v. Beretta USA Corp.*, No. 02-1501, 2007 WL 1068481 (W.D. La. 4/4/07)(citing *Johnston v. Hartford*, 623 So.2d 35, 37 (La. App. 1st Cir. 1993); *Ducote v. Liberty Mutual Ins. Co.*, 451So.2d 1211, 1213 (La. App. 4th Cir. 1984); *Duncan v. Louisiana Power & Light Co.*, 532 So.2d 968, 972 (La. App. 5th Cir. 1988).

[67] *Davis v. Avondale Industries, Inc.*, 975 F.2d 169, 172 (5th Cir. 1992).

[68] *Id.* quoting La. R.S. 9:2800.57(B)(2); *see also Duncan v. Louisiana Power & Light Co.*, 532 So.2d 968, 972 (La. App. 5th Cir. 1988)("There is no duty to warn a sophisticated user of dangers of which he may be presumed to know through his familiarity with the product."); *Gautreaux v. Tex-Steam Co.*, 723 F.Supp. 1181, 1182 (5th Cir. 1990).

[69] *Id.* (emphasis in original).

[70] *Id.*, quoting *Bradco Oil 7 Gas Co. v. Youngstown Sheet & Tube Co.*, 532 F.2d 501, 504 (5th Cir. 1976), *cert. denied*, 429 U.S. 1095 (1977).

[71] *Guillot v. Aventis Pasteur, Inc.*, No. 02-3373, 2013 WL 4508003, at *17 (E.D. La. 8/22/13)(citing *Longo v. E.I. Dupont De Nemours & Co.*, 632 So.2d 1193 (La.Ct.App.1994); *Scallan v. Duriron Co., Inc.*, 11 F.3d 1249 (5th Cir.1994); *Washington v. Dep't of Transp.*, 8 F.3d 296 (5th Cir.1993); *Davis v. Avondale Indus., Inc.*, 975 F.2d 169 (5th Cir.1992); *Bates v. E.D. Bullard Co.*, 76 So.3d 111 (La.Ct.App.2011).

In *Contranchis v. Travelers Insurance Company*, the Fifth Circuit addressed a case involving a construction worker who filed a product liability action against Hercules Sheet Metal, Inc. and its insurer.[72]  The plaintiff had allegedly sustained injuries when he fell through a pre-cut hole in sheet metal that was being used on a building under construction. The plaintiff claimed that Hercules had failed to warn about a "slippery substance" on the metal it provided for the project that he claimed caused the accident.[73]  The plaintiff also argued that because Hercules had knowledge pertaining to the 18 foot height requirement in the building specifications, it had a duty to advise the erectors of the building of the hazards of walking on the building at "high heights" and a duty to advise the erectors about the hazard of construction at heights, safety procedures on construction at heights, as well as safety instructions on the installation of skylights.[74]

The defendants moved for summary judgment asserting that "an open skylight hole in a construction project was an 'obvious danger' for which Hercules did not have a duty to warn."[75]  The defendants also argued that both the plaintiff and his employer A-1 Steel Erectors were sophisticated users of sheet metal based on their specialized business of erecting metal buildings; thus, there was no duty to warn.[76]  The trial court granted summary judgment in favor of the defendants, and the plaintiff appealed.

---

[72] 02-840 (La. App. 5 Cir. 1/28/03), 839 So.3d 301.

[73] *Id.* at 302.

[74] *Id.*

[75] *Id.*

[76] *Id.*

The Fifth Circuit affirmed the trial court, stating: "As Hercules points out, Louisiana courts have previously noted that such construction work [erecting metal buildings] is specialized per se."[77]  The court also stated: "[T]he trial court concluded that, as an entity engaged in the specialty business constructing metal buildings, A-1 [plaintiff's employer] was a sophisticated user of sheet metal and had prior knowledge of applicable safety procedures.  We find no error in this conclusion of the trial court.  We further find no error on the part of the trial court in its determination that there was no issue of material fact that Hercules had no duty to warn A-1 and its employee, Contranchis, regarding the dangers of working with metal at heights of 18 feet or of the installation of skylights."[78]

In *Hines v. Remington Arms Co., Inc.*, the Louisiana Supreme Court addressed a claim against a gunpowder manufacturer for injuries sustained by a plaintiff when a high-powered target rifle accidentally discharged into a container of gunpowder and ignited it.[79] Finding the plaintiff to be a sophisticated user, the *Hines* court opined that a sophisticated user is one who is "familiar with the product."[80]  As a result of their familiarity with a product, sophisticated users are presumed to know the dangers presented by the product; thus, there is no duty to warn them.[81]

---

[77] *Id.* at 304, citing *Chauvin v. Gulf Coast Minerals, Inc.*, 509 So.2d 622 (La. App. 3 Cir. 1987); *writ denied*, 512 So.2d 1175 (La. 1987).

[78] *Id.*

[79] 94-455, p. 10, (La. 12/8/94), 648 So.2d 331.

[80] *Id.* at 337.

[81] *Id.*

Applying the applicable law and jurisprudence to the facts of this case, the Court finds that there is no genuine issue of material fact that, based on their professional experience and use of the product, the Plaintiff, Jiminez, and Mancuso are sophisticated users. Thus, although the Defendant actually **did** warn of the danger of falling, it had no legal duty to warn Plaintiff of the known or knowable dangers and/or characteristics of #15 felt paper.

Plaintiff contends that the sophisticated user defense does not apply because TAMKO #15 is available to the general public in Lowe's and similar stores. This argument is without merit and contrary to relevant caselaw. The jurisprudence is clear that it is not the product's availability to the user, but rather the user's familiarity with the product, that makes a user "sophisticated." For example, in *Colbert v. Sonic Restaurants, Inc.*, the court held that the plaintiff, who had been burned by hot coffee, was a sophisticated user of Sonic's coffee.[82] Based on the plaintiff's admissions in his deposition that he is a regular coffee consumer and often purchased coffee from Sonic prior to the incident causing his alleged injury, the court concluded that the plaintiff "was a sophisticated user of Sonic's coffee (and coffee in general) and, in light of his experience and common sense knowledge, he should have known of the dangers inherent in drinking hot coffee."[83]

The record reflects that Mancuso, Jiminez, and Plaintiff are all regular users of #15 felt paper, and based on their roofing experience, should be well aware of the inherent

---

[82] 741 F.Supp.2d 764, 771 (W.D. La. 2010).

[83] *Id.*

characteristics and dangers in such a product. The fact that fall protection equipment was used every day on the job in question prior to the date of Plaintiff's injury is indicative of their knowledge of the risk of falling from the roof. Likewise, the fact that all three are aware that #15 felt is regularly cut with a shearing knife in its use in roofing shows that they were aware, or should have been aware, that at some point with the application of force, felt paper will "give." As the Defendant aptly stated, "[T]he relative strengths of the two products, measured by their resistance to a shearing force, is something every experienced roofer would know. Both products are reduced to a usable size by subjecting them to a shearing force. They are cut with a knife blade."[84]

Therefore, the Court alternatively finds that the Defendant owed Plaintiff no duty to warn with this product because the Plaintiff, Jiminez, and Mancuso were all sophisticated users of #15 felt paper. Even if the Plaintiff was not a sophisticated user, the caselaw discussed above shows that a "manufacturer does not have a duty to warn an end-user when the product is initially purchased by a sophisticated user that would then have the duty to warn the end-user."[85] The Defendant is entitled to summary judgment on all warning claims.

---

[84] Rec. Doc. No. 68-1, p. 6.

[85] *Supra*, n. 74.

## III.    CONCLUSION

For the reasons set forth above, the *Motion for Summary Judgment* by Defendant

Tamko Building Products, Incorporated, is hereby GRANTED in part and DENIED in part.[86]

IT IS SO ORDERED.

BATON ROUGE, Louisiana, this __7__ day of March, 2014.

**SHELLY D. DICK, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[86] Rec. Doc. No. 68.