# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JORGE FERNANDEZ AND
RENEE FERNANDEZ                          CIVIL ACTION

VERSUS                                   NO. 12-518-SDD-SCR

TAMKO BUILDING PRODUCTS
INCORPORATED AND STATE
FARM INSURANCE

## RULING

 This matter is before the Court on the *Motions for Reconsideration* filed by Plaintiffs, Jorge and Renee Fernandez[1] and Defendant Tamko Building Products[2] on the Court's *Ruling*,[3] which granted in part and denied in part the Defendant's *Motion for Summary Judgment*. Both parties have opposed the respective motions.[4]

## I. HISTORY AND PROCEDURAL BACKGROUND

 The procedural posture and history of this matter merits discussion. In Plaintiffs' original *Complaint*, they asserted claims under three theories of recovery available under the LPLA, namely, failure to warn, defective design, and defect in composition or construction. At the summary judgment stage, Plaintiffs put most of their eggs in the "failure to warn" basket and the Defendant did likewise.

---

[1] Rec. Doc. No. 112.

[2] Rec. Doc. No. 115.

[3] Rec. Doc. No. 107.

[4] Rec. Doc. Nos. 130 & 138.

On summary judgment, Plaintiffs gave short shrift to their design claim. Plaintiffs never identified or discussed any alternative design, a necessary element,[5] and otherwise failed to brief the elements of a *prima facie* case for a design defect under the LPLA.[6] Defendant TAMKO correctly pointed out that "plaintiffs have given little indication they intend to pursue [a design] claim. With the deadline for expert witness disclosures having passed, not one of plaintiffs' experts has identified a design defect."[7] Thus, the Court deemed the Plaintiffs' defective design claim waived.

As for the Plaintiffs' construction or composition defect claim, the parties' briefs on the summary judgment motion were barely adequate. The sum and substance of TAMKO's *Motion for Summary Judgment* on the Plaintiffs composition and construction claim was that:

> With the product at the center of this dispute no longer available, plaintiff's right to recovery is all but eliminated. Any claim that the product was "unreasonably dangerous in construction or composition" is incapable of

---

[5] La. R.S. 9:2800.56. To establish a design defect under the LPLA, a plaintiff must show that at the time the product left the manufacturer's control, (1) "[t]here existed an alternative design for the product that was capable of preventing the claimant's damage," and (2) "[t]he likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product." *Milton v. Rapiscan Sec. Prod.*, No. 04-591, 2005 WL 1400433, at *2 (E.D. La. June 6, 2005)(citing *Krummel v. Bombardier*, 206 F.3d 548, 551 (5th Cir. 2000); *Lavespere v. Niagara Mach & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990)).

[6] A plaintiff is required to "identify a specific alternative design in existence at the time of the injury that was capable of preventing the injury, and they must also perform a risk-utility analysis." *Milton v. Rapiscan Sec. Prod.*, No. 04-591, 2005 WL 1400433, at *2 (E.D. La. June 6, 2005)(citing *Krummel*, 206 F.3d at 551). Additionally, "[t]he alternative design proposed must be reasonably specific and not based on mere speculation." *Seither v. Winnebago Industries, Inc.*, 2002-2091, (La. App. 4 Cir. 7/2/03), 853 So.2d 37, 41.

[7] Rec. Doc. No. 68-1, p. 1. In response, Plaintiffs provided only conclusory unsupported arguments of defective design. Plaintiffs argued that the TAMKO product was defective because it was unreasonably dangerous when used on steep roofs. ( Rec. Doc. No. 74, p. 7) Plaintiffs relied on their experts' opinion that "TAMKO #15 roofing underlayment should *never* be used on steep sloped roofs, particularly absent the necessary warning of the dangers presented to roofing installers if it is used in such a dangerous application".(Rec. Doc. No. 74, p. 8, citing Householder Deposition p. 14).

proof.  La. R.S. 9:2800.54(B).[8]

Defendant moved for dismissal of the Plaintiffs' construction or composition claim on the sole grounds that the actual roofing felt in place when the Plaintiff fell had been discarded.[9]  The Defendant argued that the construction or composition theory of recovery was not available to the Plaintiff, as a matter of law, because the allegedly defective product was discarded following the accident. Defendant failed to provide authority for the legal proposition that a plaintiff may never prove a defective construction/composition claim when the actual product has been discarded but identical versions of the product are available for testing. Accordingly, the Court declined to find, as a matter of law, that Plaintiff could not satisfy his burden of proof by testing and analysis of exemplar rolls of TAMKO #15.  In the absence of argument that the record evidence was insufficient to carry Plaintiffs' burden of proof of a construction/composition claim, the Court  denied summary judgment finding that the mere destruction of the actual product did not foreclose Plaintiffs' possible recovery.  On *Motion for Reconsideration*, Defendant puts meat on the bones of the argument that the record establishes that Plaintiffs cannot carry their burden of proof on a construction or composition defect claim.

The Court granted summary dismissal of the Plaintiffs' failure to warn claim. The Plaintiffs move for reconsideration.

---

[8] Rec. Doc. No. 68-1, p. 1.

[9] *Id.*

## II.      LAW & ANALYSIS

### A.      Motion for Reconsideration

The *Motion for Reconsideration* was filed within 28 days of the relevant ruling; thus, it is evaluated pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.   "A Rule 59(e) motion calls into question the correctness of a judgment."[10]   However, a Rule 59(e) motion is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."[11]   Rather, a motion for reconsideration is for the purpose of correcting "manifest errors of law or fact or to present newly discovered  evidence."[12]

### B.      Plaintiffs' *Motion for Reconsideration*

Plaintiffs make various assertions of error by the Court in its previous *Ruling.*   As several of Plaintiffs' arguments are essentially the same arguments presented to the Court in opposition to the *Motion for Summary Judgment*, the Court will not engage in "rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."[13]   The Court will, however, make the following observations.

Plaintiffs take umbrage with the Court's reference to a "heavy burden" regarding the construction and composition defect claim. In denying the Defendant's summary judgment on the construction or composition claim, the Court held that the Plaintiffs could perhaps prove a defect in construction or composition by evidence adduced from testing exemplars.

---

[10] *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004)(citation and quotations omitted).

[11] *Id.* at 479.

[12] *Id.* (citations and quotations omitted).

[13] The Court has considered all of Plaintiffs' contentions whether or not specifically addressed herein.

The Court did not change the burden of proof in this case as Plaintiffs suggest.  Rather, the Court was merely observing that proving that the subject felt was "defective due to a mistake in the manufacturing process"[14] may be difficult by means of examplar.

Urging reconsideration of the Court's dismissal of the failure to warn claim, Plaintiffs suggest that summary judgment is never proper in a product liability case.  The wealth of jurisprudence to the contrary, as well as the multitude of cases cited by the Court in its *Ruling*, belie this contention.   The Court granted summary judgment dismissing the Plaintiffs' failure to warn claims on two grounds; 1) insufficient evidence that "but for" the allegedly inadequate warning, the accident in question would not have occurred,[15] and 2) no duty to warn a sophisticated user.

It is undisputed that the subject TAMKO #15 felt contained a warning that "APPROPRIATE FALL PROTECTION METHODS SHOULD BE USED WHENEVER WORKING ON ROOFS."[16] It is undisputed that the Plaintiff never read the label which contained the warning.[17] Plaintiff argues that the warning, which he concedes he did not read, should have warned that the subject felt could tear under foot traffic on a steep roof. However, in light of the established fact that the Plaintiff did not read the warning provided, the Plaintiff cannot establish that "but for" the allegedly inadequate warning, the accident in question would not have occurred.[18]  Plaintiffs argue that the matter of proximate cause

---

[14] *Id.*, quoting *Stahl*, 283 F.3d at 263 (citing La. R.S. § 9:2800.55)(emphasis added).

[15] *See Brown v. Parker-Hannifin Corp.*, 919 F.2d 308, 311 (5th Cir. 1990).

[16]  Rec. Doc. No. 74-22.

[17]  Rec. Doc. No. 68-3, Deposition of Jorge Fernandez, p. 89.

[18] *See Brown v. Parker-Hannifin Corp.*, 919 F.2d 308, 311 (5th Cir. 1990).

is not to be decided by the Court, but is a question for the jury.  The Court would simply point to the cases it relied on in the *Ruling* as clear holdings to the contrary.[19]

Plaintiffs contend the Court's determination of the actual risk involved in this case, determined by the Court to be the risk of falling, was a matter for the jury.  However, in *Stahl v. Novartis Pharmaceuticals Corp.*, the Fifth Circuit noted that "[t]his court has determined that 'obviousness' [of the risk] can be appropriately evaluated as a matter of law in a summary judgment proceeding."[20]  Likewise, in *Krummel v. Bombardier Corp.*, the Fifth Circuit stated on review of a district court ruling in an LPLA case, "[a] court must first determine what risk, if any, the product created."[21]  Regardless of how this Court defined the risk that caused the Plaintiff's injury, in light of his admission that he did not read the warning, the Plaintiff lacks evidence of a necessary element of his warning claim, namely that "but for" the lack of adequate warning, he would not have fallen.

In any event, the Plaintiff was, as a matter of fact, a sophisticated user. Both the Plaintiff and his employer described themselves as professional roofers.[22] Likewise, Mr. Mancuso, Regional Sales Manager for Eagle Roofing, who chose and purchased the subject felt was, as a matter of established fact, is a sophisticated user and purchaser.[23]  "[M]anufacturers have no duty to warn an end-user of a product's dangers when the

---

[19] *See Peart v. Dorel Juvenile Group, Inc.*, No. 09-7463, 2011 WL 1336563 (E.D. La. April 7, 2011); *Ortolano v. BDI Marketing*, 05-989 (La. App. 5 Cir. 4/25/06), 930 So.2d 192.

[20] 283 F.3d 254, 268 n. 8 (5th Cir. 2002)(citing *Scallan v. Duriron*, 11 F.3d 1249, 1252 (5th Cir. 1994).

[21] 206 F.3d 548, 551 (5th Cir. 2000).

[22] *See* Rec. Doc. No. 68-3, p. 5 (Deposition of Jorge Fernandez, p. 27, lines 1-3).

[23] Rec. Doc. No. 68-8.

product is initially purchased by a sophisticated user that would have the duty to warn the end-user."[24] Finally, the Plaintiffs' contention that the "sophisticated user" exception is a question for the jury is contradicted by the cases on which the Court relied.[25]

For the first time in their *Motion for Reconsideration*, Plaintiffs argue that the doctrine of *res ipsa loquitur* applies in this case. The Court notes that nowhere in Plaintiffs' *Opposition* did they argue the doctrine of *res ipsa loquitur*, and the Court does not consider the issue to be appropriately before the Court.[26] However, even if this theory had been offered, Plaintiffs have neither satisfied nor argued the elements of that burden in this case. *Res ipsa loquitur* **only** applies "where direct evidence of defendant's negligence is not available to assist the plaintiff to present a prima facie case of negligence."[27] "In order to apply *res ipsa loquitur* three criteria must first be satisfied: (1) the injury is of the kind which does not ordinarily occur in the absence of negligence on someone's part; (2) the evidence sufficiently eliminates other more probable causes of the injury, such as the conduct of the plaintiff or of a third person; and (3) the alleged negligence of the defendant must be within

---

[24] *Guillot v. Aventis Pasteur, Inc.*, No. 02-3373, 2013 WL 4508003, at *17 (E.D. La. 8/22/13)(citing *Longo v. E.I. Dupont De Nemours & Co.*, 632 So.2d 1193 (La.Ct.App.1994); *Scallan v. Duriron Co., Inc.*, 11 F.3d 1249 (5th Cir.1994); *Washington v. Dep't of Transp.*, 8 F.3d 296 (5th Cir.1993); *Davis v. Avondale Indus., Inc.*, 975 F.2d 169 (5th Cir.1992); *Bates v. E.D. Bullard Co.*, 76 So.3d 111 (La.Ct.App.2011).

[25] *See Contranchis v. Travelers Insurance Co.*, 02-840 (La App. 5 Cir. 1/28/03), 839 So.2d 301 (appellate court affirmed the **determination of the trial court** that plaintiff was a sophisticated user); *Bates v. E.D. Bullard Company*, 2011-187 (La. App. 3 Cir. 10/5/11), 76 So.3d 111 (appellate court affirmed trial court's application of the sophisticated user defense and rejected plaintiff's argument that there was an issue of fact on this issue).

[26] *See Bustamente v. U.S. Dept. of Veterans Affairs*, No. 03-31160, 107 F. App'x 426, 427, citing *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).

[27] *Shuff v. Brookshire Grocery Company*, 45,109 (La. App. 2 Cir. 3/3/10), 32 So.3d 1030, citing *Linnear v. Centerpoint Energy Entex/Reliant Energy*, 06-3030 (La. 9/5/07), 966 So.2d 36.

the scope of the defendant's duty to the plaintiff."[28]   Furthermore, the Louisiana Supreme Court has held that "use of the doctrine of *res ipsa loquitur* in a negligence case, as in any case involving circumstantial negligence, does not relieve the plaintiff of the ultimate burden of proving by a preponderance of the evidence all of the elements necessary for recovery."[29]   Moreover, the Louisiana Supreme Court has emphasized "that the doctrine of *res ipsa loquitur* is to be used 'sparingly' in products liability cases, and 'only when the plaintiff has excluded other "reasonable explanations" for an accident.'"[30]   For the first time in this litigation and raised in support of their *Motion for Reconsideration*, Plaintiffs simply cite to various cases applying the doctrine, then argue its applicability here for the same reasons.  Plaintiffs have failed to establish any of the three elements listed above to apply the *res ipsa loquitur* doctrine to their case.

The Court also finds that the *Ruling* on Plaintiffs' warning claims is fully supported by the analysis, reasoning, and supporting jurisprudence set forth therein.  Accordingly, Plaintiffs' *Motion for Reconsideration*[31] is DENIED.

### C.    Defendant's *Motion for Reconsideration*

The Defendant has also moved for reconsideration of the Court's *Ruling* denying summary judgment on Plaintiffs' construction and composition defect claim.  The Defendant contends that there is no evidence to support this claim, and summary judgment should be

---

[28] *Id.*, citing *Linnear*, 966 So.2d at 36.

[29] *Cangelosi v. Our Lady of the Lake Medical Center*, 564 So.2d 654,666 (La. 1989) (emphasis added).

[30] *Lawson v. Mitsubishi Motor Sales of America, Inc.*, 2005-0257 (La. 9/6/06), 938 So.2d 35, 45.

[31] Rec. Doc. No. 112.

granted on this claim after reconsideration.  The Defendant contends that Plaintiffs cannot carry their burden of proof on the construction and composition defect claim because none of Plaintiffs' liability experts conducted any tests in which they compared exemplars of TAMKO #15 felt with other samples of the same product.  Further, Defendant contends neither expert rendered any opinion that exemplars of TAMKO #15 deviated from TAMKO's specifications or performance standards for that product.  While Plaintiffs' expert, Dr. Jerry Householder, did test a sample of TAMKO #15 to determine the "tensile strength," his report is void of any indication that he compared this sample to any other samples of #15 felt or that the sample tested deviated from TAMKO's specifications or performance standards for #15 felt.  Likewise, Patrick Heil's report is void of any reference to conducting tests of exemplars of TAMKO #15 felt.

Plaintiffs oppose this motion, reiterating their opposition to the Court's reference to their "heavy" burden at trial for the construction and composition defect claim.  Plaintiffs also re-urge the doctrine of *res ipsa loquitur* as set forth in their own *Motion for Reconsideration*.  As the Court has addressed these issues above, it will not repeat its findings here.  Finally, Plaintiffs argue their experts could not have concluded that tested samples of TAMKO #15 deviated from TAMKO's performance standards or specifications because no such standards or specifications exist.

To prevail on a construction or composition defect claim under the LPLA, "a plaintiff must show that 'at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the

product or from otherwise identical products manufactured by the same manufacturer.'"[32] "In other words, a plaintiff must prove that a product 'is defective due to a mistake in the manufacturing process.'"[33] Furthermore, "[t]o make this showing, a plaintiff 'must demonstrate not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it "unreasonably dangerous."'"[34] The Plaintiff may not defeat summary judgment by merely professing that no performance standards or product specifications exist.  Plaintiffs fail to point to any evidence in the record that TAMKO has no performance standards or product specifications for its #15 felt.  This burden is clearly on the plaintiff in a Louisiana products liability case.  La. R.S. 9:2800.55 requires proof that:

> the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.

Plaintiffs fail to point to any record evidence that the exemplar felt failed to conform to the manufacturer's performance standards or specifications.  Assuming *arguendo* that TAMKO had no manufacturing specifications or performance standards for its #15 felt, the *Abrogast v. Timex Corp.*,[35] case indicates that, at the very least, Plaintiffs should come forward with evidence of applicable industry or regulatory standards, to which the product failed to

---

[32] *Abrogast v. Timex Corp.*, No. 05-2076, 2010 WL 148288, *5 (W.D. La. Jan. 12, 2010)(quoting La. R.S. § 9:2800.55).

[33] *Id.*, quoting *Stahl*, 283 F.3d at 263 (citing La. R.S. § 9:2800.55)(emphasis added).

[34] *Moore v. BASF Corporation*, No. 11-1001, 2012 WL 6025917, *3 (E.D. La. Dec. 4, 2012)(quoting *Welch v. Technotrim, Inc.*, 34,355 (La. App. 2 Cir. 1/24/01), 778 So.2d 728, 733)(emphasis added).

[35] Note 32, *supra*.

conform.

In *Abrogast v. Timex Corp.*, the district court granted summary judgment on plaintiff's LPLA construction or composition defect claim, where plaintiff argued that the Timex watch he purchased contained dangerous levels of hexavalent chromium which caused plaintiff's severe skin reaction.[36]   The court granted summary judgment on this claim because it found that plaintiff's expert "fail[ed] to state what the applicable industrial and regulatory standards are, what the manufacturing specifications of Timex are, what he expects the manufacturing specifications of Timex to be, or whether the watchband actually deviates from the manufacturing specifications of Timex."[37]  The court further stated that, "[t]he conclusory affidavits of Plaintiff's experts are simply insufficient to demonstrate the existence of a genuine issue of material fact as to whether the watchband is unreasonably dangerous in construction or composition."[38]

Similarly, in *Moore v. BASF Corporation*,[39] plaintiffs alleged claims under the LPLA due to alleged benzene exposure from plaintiff's work as a painter for several years. Plaintiffs sued various companies alleged to manufacture benzene-containing products. On summary judgment, defendant International Paint argued plaintiffs failed to carry their burden on their construction/composition defect claim.[40]  The court noted that, to set forth

---

[36] *Abrogast*, 2010 WL 148288, at *5.

[37] *Id.* at * 6.

[38] *Id.*, citing *Grenier v. Med. Engineering Corp.*, 99 F.Supp.2d 759, 764 (W.D. La. 2000), *aff'd*, 243 F.3d 200 (wherein the district court dismissed the plaintiff's claim for a construction defect **because plaintiffs failed to submit any evidence indicating what the manufacturer's standards were or whether the product deviated from those standards**.)(emphasis added).

[39] No. 11-1001, 2012 WL 6025917 (E.D. La. Dec. 4, 2012).

[40] *Id.* at *2.

a claim for a construction/composition defect, "a plaintiff 'must demonstrate not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it "unreasonably dangerous."'"[41]  In particular, the court noted that plaintiffs' expert "did not purport to test the particular paint products" that were used.[42]  Thus, the court found that: "[p]laintiffs have put forth no additional evidence demonstrating that the products that Mr. Moore encountered deviated from specifications or performance standards or that plaintiffs even have custody of the paint in question so that tests may be conducted. Therefore, plaintiffs have failed to put forth evidence that International Paint's products were unreasonably dangerous in their construction or composition."[43]  Importantly, the court noted, "[b]ecause plaintiffs bear the burden of proof on their LPLA claims at trial, defendant has satisfied its burden on summary judgment by pointing out that the evidence in the record contains insufficient proof of an essential element of plaintiffs' composition claim."[44]

After reconsideration, the Court finds that the record in this case warrants the same result.  Despite Plaintiffs' protestations that "none exist," it is the Plaintiffs' burden, as set forth in the jurisprudence discussed and cited above, to produce either company

---

[41] *Id.*, quoting *Welch*, 778 So.2d at 733.

[42] *Id.* at 3.

[43] *Id.* (See, *e.g.*, *Lacoste v. Pilgrim Int'l*, No. 07–2904, 2009 WL 126847 (E.D.La. Jan. 15, 2009) (granting summary judgment since plaintiffs did not put forth evidence of defendant's manufacturing specifications or demonstrate how the product in question materially deviated from such standards); *Gray v. Indus. Plant Maint.*, No. 01–1167, 2004 WL 1661209 (E.D.La. July 23, 2004) (plaintiff did not have custody of tractor that allegedly injured him and so could not demonstrate how it deviated from the manufacturer's standards); *see also Ortolano*, 930 So.2d at 195 ("[Plaintiff] has provided no evidence that this medication deviated from the manufacturer's specifications ...").

[44] *Id.* (emphasis added).

specifications and performance standards or at least industry standards and show how the product deviated therefrom.  While the Court did previously hold that this claim survived summary judgment because of the possibility to test and compare exemplar products in an effort to make this showing, it is now clear to the Court that no such comparison/tests have been performed.  Furthermore, the law is clear that a composition defect is not to be inferred simply because the product tore: "Defects are not presumed [to be present]  by the mere happening of an accident."[45]  The doctrine of *res ipsa loquitur* is unavailable to the Plaintiffs for the reasons set forth above.  The Court must find, after careful reconsideration of the record, that there is simply insufficient evidence which would enable Plaintiffs to carry their burden on the construction/composition defect claim.

---

[45] *Spott v. Otis Elevator Co.*, 601 So.2d 1355, 1364 (La. 1992); *see also Grenier*, 243 F.3d at 205 ("Louisiana law does not allow a fact finder to presume an unreasonably dangerous design solely from the fact that injury occurred.").

III.     **CONCLUSION**

Accordingly, Defendant's *Motion for Reconsideration*[46] is GRANTED, and Defendant's *Motion for Summary Judgment*[47] on Plaintiffs' construction/composition defect claim, which was the only remaining claim before the Court, is hereby GRANTED.  The trial set for May 5, 2014, is hereby cancelled.  All pending motions are denied as moot.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED**.

Signed in Baton Rouge, Louisiana, on <u>April 11, 2014</u>.


_Shelly D. Dick_

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[46] Rec. Doc. No. 115.

[47] Rec. Doc. No. 68.

Doc 1266                                    14